COWDEN *v.* ELLIOT.

2 | 60
34a | 620

A debt due to a defendant as a surviving partner, may be set off against a demand upon him in his own right, and so *vice versa.*

ERROR from the Circuit Court of St. Louis.

M'GIRK, C. J., delivered the opinion of the Court.

Cowden brought an action of debt against Elliot, on a bond given by him to Cowden and one Sanderson; the declaration shows that Sanderson was dead before the action was brought. Elliot put in a plea of set-off, alledging that Cowden and one Keene were jointly interested in the navigation of a boat, and that Cowden, as such part owner, employed him to navigate the boat. Issue was taken on this plea. At the trial, Elliot proved his plea exactly, and the Court decided that the evidence was insufficient in law to enable him to claim a set-off under the plea.

It is clear that the Court considered this matter as on a demurrer to the plea, and in that way held that the matter of set-off could not be allowed. The proof must fit the allegation ; in this case it did do so, and the Court did wrong to exclude (61) it. But as the argument of the counsel, and the opinion of the Court, turned on the point whether in this case the matter of the set-off could be allowed by law, I will endeavor to meet the point.

It is objected that Elliot's demand wants mutuality, and that it is a joint demand against Cowden and another, and therefore cannot be set off. To prove the position correct, 6 *Bac. Abr.* 136 is cited. No doubt this is correct doctrine, according to the decisions under the British statute ; it is correct as a general rule ; yet I consider it to admit of some modifications. By two cases, if not more, decided by the British Courts, I find in the above cited page of *Bacon* this doctrine : That a debt due to a defendant as a surviving partner, may be set off against a demand upon him in his own right, and so *vice versa.* To prove this, Slipper *v.* Stedstone, 5 *T. R.* 493, and French *v.* Andrede, 6 *T. R.* 583, are cited. I have looked into the cases and they fully support the point.

These cases show that although the demand was at one time in a condition that it could not be set off, yet when it became a sole or separate demand by the death of a partner, it might be set off. But this matter all aside, I am most clear that this demand of Elliott may, under our statute, be set off. The statute says, page 738 of the *Revised Code*: that if two or more persons be mutually indebted to each other by judgments, bills, bonds, bargains, &c., and one of them commence an action, one debt may be set off against another, notwithstanding such debt may be deemed in law of a different nature. The statute requires that the debts should be mutual. The meaning of this is, that A., the plaintiff, should be indebted to B., the defendant, and not that A. should be indebted to B. and another jointly ; but by the above case cited from *T. R.* if one of the debts was a joint one, and by the death of one of the obligors or obligees, it became the sole debt of the other, or a sole right of a surviving obligee, then it may be set off. Our statute has done the same thing the

common law would have done, where one of the joint obligors is dead.. In that case the whole obligation would survive against the surviving obligor, and it would be a sole demand against him. By the fourth section of the act defining the effect of contracts, *Rev. Code,* 215, it is declared that all contracts which were by the common law deemed joint, shall be deemed joint and several to all intents and purposes. And by the latter clause of that section, it is declared that all joint assumptions of co- (ˉ62) partners and others may be sued on separately.

It seems to me to be clear that this demand against Cowden was his sole debt to all intents and purposes, though the other partner was also liable. If it was a sev-- eral demand against him, it may be a set-off; the mutuality required by the law would exist.

The judgment of the Circuit Court is reversed, and sent back for a new trial.

TOMPKINS, J., dissenting.

Cowden, survivor of Sanderson, sued Elliot on a note made to Cowden and San-- derson by Elliot. Elliot sets up a demand which he has against Cowden and Keene, and claims a set-off. By the act regulating set-off, " if two or more persons be mu- tually indebted to each other by judgments, bills, bonds, bargains, promises, accounts or the like, and one of them commence an action in any Court, one debt may be set off against the other, notwithstanding such debts may be deemed in law of a differ- ent nature."

At common law, if the plaintiff was as much or more indebted to the defendant than the defendant was indebted to him, yet he had no method of striking a balance, the only way of obtaining relief was to go into a Court of Equity. To remedy this inconvenience, the several statutes of set-off were passed in England. Under these statutes it has often been decided that a joint demand cannot be set off against a separate demand, and that a separate demand cannot be set off against a joint de- mand; for the demands are not mutual, and at common law the action must be brought against all the joint obligors : therefore, if A. sue B. on his bond for $100, B. could not set off the bond of A. and C. made to B. for the same sum, because he could not have an action against A. alone on the joint bond of A. and C.

But by our act defining the effect of contracts and promises from and after 12th. February, 1825, all contracts which by the common law are deemed joint, shall be construed to be joint and several to all intents and purposes.

B. then can sue A. alone on the joint obligation of A. and C. to him, he may then have this joint demand against A. and C. set off against the separate demand of A. against himself, and there is no injustice in it; for at common law even A. was lia- ble to B. for the whole demand.

But if A. and C. had sued B. on his obligation to them, it does not follow that B. can set off a separate demand against A. Our statute gives B. no right to sue A. and (63) C. on a bond executed to him by A., although he may have executed his bond to them for any sum of money. If, then, B. have no right to sue A. and C. on the bond of A. made to B., what right has he to set off his demand on A. against the demand of A. and C. But suppose, as in the case before the Court, C. were dead, and A. were to sue B. on the bond, suggesting the death of C., what would then have been the remedy of B. before the enactment of the statute of set-off? He would have gone into a Court of Equity and prayed that he might be allowed to set

off against the demand of A., survivor of C., so much of his demand against A. as. would balance the interest of A. on the bond on which he, A., as survivor of C.,. had sued B., and such relief and no more would have been given him. A Court of Law, then, if it were to allow a set-off in such a case, could do no more than a Court of Equity. But it appears to me that a Court of Law ought not to allow a set-off in such a case, for it has not the same means of ascertaining A.'s interest in the bond as a Court of Equity has. The case before the Court is even harder than the case which I have stated; for Elliot claims to set off not a separate demand against Cowden, but a joint demand against Cowden and Keene—thus making the estate of Sanderson not only pay the debts of Cowden, which Sanderson never promised to do either directly or indirectly, but also the debts of Keene. It seems to me that the act defining the effect of contracts and promises, was intended only to affect the remedy against joint obligors or promisors, and that the law of set-off can be no otherwise changed by it than to allow a defendant to set a joint demand off against a separate one.

The laws of set-off was certainly never intended to give a defendant rights against a plaintiff, against whom he could have recovered nothing before the enactment of that law; two cases from Term Reports have been cited, neither of which seems to me to meet the case. In Slipper v. Stedstone, from 5 T. Rep., the defendant sets off a demand due from plaintiff to defendant, and another deceased against a demand due from defendant to plaintiff; and in the case of French v. Andrade, from 6 T. Rep. the defendant sets off a demand due from the plaintiff and a deceased partner to defendant, against a demand due from defendant alone to plaintiff alone.

In each of the cases cited, the plaintiff is liable to pay the whole demand set off, and there is no doubt but both in law and equity he has a right to appropriate his (64) own separate demands against the defendants, in each case, to the payment of the demands set off against him. But in the case before the Court, has he, in law or equity a right to appropriate the interest of Sanderson's representatives, in the writing sued on, to the payment of separate demands against himself? It is true, if he: were to collect the money due to himself, as surviving partner of Sanderson, and appropriate it to the payment of his own debts, that Sanderson's representatives would have no remedy but against him. But if Sanderson, in his lifetime, were willing to trust to the integrity of Cowden to pay over to him, or to his representatives after his death, his portion of the demand against Elliot, this furnishes no reason to presume that he was willing that Elliot should appropriate the same demands to the payment of his (Elliot's) demand against Cowden and Keene; and without his assent, can even the legislative power itself appropriate his property to the payment of the demand of Elliot against Cowden and Keene? No assent, either express or implied, appears to me to have been given.

To illustrate this case more fully, I will suppose that at the death of Sanderson there had been joint stock left, belonging in equal portions to himself and Cowden, and will suppose that they had been partners in trade, and that after the death of Sanderson, Cowden absconds, and Elliot sues out an attachment to secure the same demand against Cowden and Keene, but finding no property of Cowden or Keene, he finds exactly enough of the property of Cowden and Sanderson, deceased, to satisfy the demand of himself against Cowden and Keene. It appears to me very plain, that no more than the interest of Cowden could be sold to satisfy the demand, and it appears to me equally as plain, that it would be as much a violation of law and.

justice to allow Elliot to appropriate the demand of Cowden and Sanderson against himself, as the stock in trade of the same persons to the satisfaction of his demand against Cowden and Keene; and yet if Cowden wished, he could sell the joint stock in trade, and apply the money so raised to the payment of his own debts. I am inclined to think that the Legislature never intended to allow a set off where he could not have made the same party liable in a cross action for his whole demand. In the lifetime of Sanderson, Cowden and he must have joined in this suit, and no cross action could have been brought by Elliot for his demand on Cowden and Keene. The (65) justice of the case is not changed by the death of Sanderson, for his interest survives to his representatives.

For the reasons above given, I think the judgment of the Circuit Court ought to be affirmed.